Filed 1/2/14  P. v. Hicks CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DENNIS R. HICKS,<br><br>        Defendant and Appellant. | A138643<br><br>(Napa County<br>Super. Ct. No. CR34668) |

Dennis R. Hicks appeals from a final judgment determining that he qualifies as a mentally disordered offender (MDO), and recommitting him to Napa State Hospital for a period of one year.  (Pen. Code, §§ 2790, 2792.)[1]  His court-appointed attorney has filed a brief raising no legal issues and requesting this court independently review the record pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*) and *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).

Appellant's counsel acknowledges that, pursuant to *People v. Taylor* (2008) 160 Cal.App.4th 304 (*Taylor*), judicial review pursuant to *Anders* and *Wende* is not required in appeals from civil commitments under the Mentally Disordered Offender Act (MDOA).  (§ 2962.)  Counsel believes, however, "that the California Supreme Court would, and should, reach a different result [from *Taylor*] in MDO cases."  Counsel also maintains that "even if *Wende/Anders* procedures are not required because of the similarities between MDO and criminal cases, they are required under the due process

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

1

clause of the State and federal constitution." As counsel sees it, *Conservatorship of Ben C.* (2007) 40 Cal.4th 529 (*Ben C.*) and *In re Sade C.* (1996) 13 Cal.4th 952, which are the bases of the holding in *Taylor*, involve appeals in proceedings in which the risk of an erroneous result that would result from the elimination of *Wende* review is far less than that which would result from the elimination of such review in MDOA cases. Counsel argues, in other words, that *Taylor*'s analysis of the procedural protections afforded an MDO in section 2962 proceedings "overstates their significance."

Finally, appellant argues that even if we agree with *Taylor* that *Wende/Anders* review is not required in MDO cases, we nevertheless retain discretion to conduct such review (see *Ben C.,* at p. 553, fn. 7), and should do so.

Concurring with the reasoning and result in *Taylor*, we decline to depart from the ruling in that case. However, we are mindful of the forceful dissent in *Ben C.* emphasizing the fundamental nature of the private interests at stake in that case, which are comparable to those at stake in this case, and observing that the majority's holding "in no way prevents the Courts of Appeal from expending the minimal effort required to provide these appeals with a second look and to provide an opinion that briefly notes the court has reviewed the record and that identifies the findings and evidence supporting the order." (*Ben C., supra*, 40 Cal.4th at p. 556.) For those reasons, we shall undertake review of the record.

## FACTS AND PROCEEDINGS BELOW

The record is unclear as to why and exactly when appellant was originally found to be an MDO and committed to Napa State Hospital. It does indicate, however, that as a result of his mental state appellant has been "in and out of the hospital since the age of 15" and may initially have been committed to Napa State Hospital due to a finding he was incompetent to stand trial. (See §§ 1026, 1026.5.) The record also shows that in 1999, while a patient in that facility, appellant was charged by the District Attorney of Napa County with assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)) and battery with serious bodily injury (§ 243, subd. (d)). On October 6th of that year, after the battery had been dismissed, appellant entered a plea of guilty to the assault.

2

The instant proceeding commenced on November 20, 2012, when the District Attorney of Napa County filed a petition seeking to recommit appellant as an MDO pursuant to sections 2970 and 2972. Jury trial commenced on May 6, 2013, and a verdict concluding appellant "represents a substantial danger of physical harm to others" (§ 2972, subd. (c)) was returned at 1:30 p.m. the next day. The evidence received at the trial consisted entirely of the testimony of Dr. Kamaljeet Boora, a staff psychiatrist at Napa State Hospital, who was the prosecution's sole witness. Appellant did not testify and the defense presented no witnesses.

Dr. Boora, who had been treating appellant for about a year-and-a-half, diagnosed him as having a schizoaffective disorder, bipolar type, along with polysubstance dependency. Appellant's psychotic symptoms included "grandiose delusions he's in charge, and a ruler of the world. He's the best singer, dancer. And he feels doctors are drinking his blood, and doctors are keeping him in the hospital to make money. And he's hearing voices telling him to do things." Appellant also suffers "manic symptoms," such as angry outbursts, raising voices, irritability, and feelings of grandiosity. Documents regarding appellant showed that he began exhibiting mental illness around the age of 15, at which time he started using drugs and engaging remorselessly in assaultive behavior and violence, although his behavior problems started even earlier.

Though appellant was then daily being administered two antipsychotic medications and a "mood stabilizer" by staff (as well as another medication for "side effects"), he remained "very psychotic, still hearing voices, and delusional," which showed he was not responding to medication as well as had been hoped. Although appellant takes his staff administered medication, he does not think he suffers any mental illness and "doesn't think he needs medication." Though he refuses to believe he has any medical problems, appellant also suffers from diabetes and hypertension. If appellant's medications are lowered, even slightly, he becomes "very angry, very irritable."

Asked whether, in his opinion, appellant represents a danger to others, Dr. Boora stated "yes," explaining that he has "serious mental illness that is not responding to medication," and "doesn't think he needs medication." While appellant engages in group

3

therapy, he does so only sporadically due to his lack of insight regarding his mental illness and symptoms.

Dr. Boora also testified that appellant has a history of violence. In 2010, he engaged in "physical altercation with other patients," and before that assaulted Napa staff members. Appellant had also engaged in or been arrested for such assaults in 2004, 1998, 1990 and 1987. Due to his violent behavior, appellant has been housed in Unit E-8, a so-called "stabilization unit," which provides the "highest level of care" available at Napa State Hospital. (The two lower levels of care available there are in the "transitional" and discharge" units.)

On cross-examination, Dr. Boora stated that, at the time of his 2010 assault, appellant was housed in the "high security zone of Napa State Hospital" used for mentally ill offenders and patients found not guilty of a charged offense due to insanity, which are the most dangerous patients at the hospital, and had been housed in this security zone since 1998. Before that time, appellant had been housed in Napa State Hospital due to the fact he had been found incompetent to stand trial, and due to his mental state had previously been "in and out of hospital" since a teenager.

Dr. Boora acknowledged that he spent only "about 10 minutes" preparing his April 2013 progress note on appellant, and at that time there was no behavioral problem. However, he also stated that appellant had screamed at him every time he passed by and "was screaming at the staff for one week or so," asserting that he had no mental illness and should not be in the hospital. Boora also stated that appellant's medication was recently changed, after he reported hearing voices and was observed talking to himself.

On redirect, Dr. Boora stated that the recent change in appellant's medication was due to his increased screaming at staff. He also stated that as a result of appellant's assault on a hospital staff person in 1998, a court ordered that petitioner be administered a (presumably psychotropic) medication involuntarily if necessary; though he ordinarily took the medications administered him by hospital staff voluntarily. In Dr. Boora's opinion, the medications appellant has been taking and the treatment group meetings he sporadically attended have "improved" but not "controlled" his symptoms.

4

At the close of Dr. Boora's testimony, the prosecution and defense both declared they had no documents or other evidence to offer and rested.

After a recess, the jury left the courtroom, the court advised counsel it planned to give the same jury instructions it had used in the May 8, 2012 proceeding, which was evidently appellant's last recommitment hearing, gave a copy of those instructions to counsel for review, and declared a recess. Defense counsel made no objection to the proposed instructions, and they were given to the jury.

After the instructions were given, counsel made their final arguments to the jury. The case was then submitted to the jury, the bailiff was sworn, the jury selected a foreperson and, it being about 5:00 p.m., the court instructed jurors to return to the jury room at 8:30 a.m. the next day to commence deliberations. The jury returned its verdict at 1:30 p.m. the following day. The jury determined appellant has a mental disorder; that the disorder is not in remission without continued treatment; and that because of his severe mental disorder he currently presents "a substantial danger of physical harm to others."

## DISCUSSION

Having reviewed the entire record, we find that appellant was at all times represented by competent counsel who ably protected his rights and interests, no inadmissible evidence was received nor admissible evidence rejected by the court, no instructional error was made by the court, and the court's order extending appellant's commitment for a period of one year was lawful.

The only event at trial deserving of discussion was a comment made by the district attorney during closing argument.

In response to defense counsel's statement in his closing argument that jurors would not think a neighbor presented a "substantial danger of physical harm to others" in the absence of a recent overt act, which was assertedly missing in this case, the district attorney stated as follows: "Mr. Raphael talks about neighborhoods. How many of you would like to go home and find out that Mr. Hicks is living in the house next to you[?]" Defense counsel immediately objected.

5

After an unrecorded bench conference, the court told the jury: "I just want to say, we had a nice, agreeable and important discussion here at the bench, about the remarks being made [by counsel]. [¶] Mr. Rossi [the district attorney] and Mr. Raphael [the public defender] expressed their views, and Mr. Rossi will now continue his argument as we have agreed he ought to."

The district attorney then said to the jury: "Let me say, there's no danger that Mr. Hicks is going to move into your neighborhood. That's not the essence of my statement. My statement is if somebody like Mr. Hicks moved into your neighborhood, how would you feel, even if you knew that he had not attacked somebody for a period of time. [¶] Whether Mr. Raphael likes it []or not, the law does not require that . . . I stand here and prove to you that he has attacked somebody recently. [¶] Nothing in the jury instructions requires me to prove that he has attacked anybody at any time, only that he's a substantial danger to others. That's all that's required by law."

Assuming the statement objected to was improper, we believe the district attorney's clarification that its purpose was limited to a pertinent legal question—i.e., whether a finding of substantial danger could be made in the absence of a recent overt act—eliminated any possible prejudice.

For the foregoing reasons, we find no arguable legal issues warranting further briefing.

## DISPOSITION

The order extending appellant's commitment for a period of one year, from June 14, 2013 to June 14, 2014 is affirmed.

6

_____
Kline, P.J.

We concur:


_____
Richman, J.


_____
Brick, J.*


\* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7